COMMONWEALTH of Kentucky,
Appellant,

v.

Kenneth COX, Appellee.

No. 90–SC–618–DG.

Supreme Court of Kentucky.

Sept. 3, 1992.

Chris F. Gorman, Atty. Gen., Perry T. Ryan, Asst. Atty. Gen., Frankfort, for appellant.

Michael M. Losavio, Appellate Public Advocate, Napier & Napier, Louisville, for appellee.

STEPHENS, Chief Justice.

Appellee, Kenneth Cox, was convicted in the Menifee Circuit Court of four counts of rape in the third degree (KRS 510.060(1)(b), sexual intercourse between a person being 21 or more years of age with a person less than 16 years of age), and one count of sodomy in the third degree (KRS 510.-090(1)(b), deviate sexual intercourse by a person being 21 years of age or more with a person less than 16 years of age) and was sentenced to serve five years of imprisonment.

The Court of Appeals reversed, holding that the Commonwealth failed to produce sufficient corroborating evidence to support the accusations made by the prosecutrix, in order to "cause reasonable minds to believe her over [the appellee]." Finding further ground for reversal, the Court of Appeals ruled that the trial court erred when it denied defense counsel the opportunity to cross-examine Commonwealth's witness, Randy Patrick, concerning his alleged probation on a misdemeanor conviction. The appellee asserted throughout the trial, that the prosecutrix had had sexual encounters with Patrick, who was a neighbor, and a friend, of the Cox's household.

We remand the case to the trial court for a retrial on all the issues, for the reasons that follow.

The Commonwealth contends that the Court of Appeals erred in ruling that: (1) an accusation of a sexual offense must be supported by corroborating evidence; (2) the evidence was insufficient to support the conviction; and (3) cross-examination of a Commonwealth's witness concerning his probation for a misdemeanor conviction was improperly denied.

According to testimony of the fifteen-year-old prosecutrix, the appellee, her step-father, engaged in sexual intercourse with her on six separate occasions. The appellee was charged and convicted on five counts. These events the prosecutrix alleged, began in September of 1988, and ended on March 17, 1989.

At trial the prosecutrix claimed that the first incident took place in September, 1988, on her mother's waterbed, after she drank alcohol offered by the appellee, though detail concerning the alcohol was omitted in her Grand Jury testimony. The prosecutrix further alleged that during this incident the appellee also placed his mouth upon her breasts and upon her genital region. During the second incident in October, 1988, the prosecutrix testified that before the appellee engaged in sexual intercourse, he touched and kissed her, and placed his hands in her pants. At this moment the prosecutrix claimed her step-brother and sister entered the front room

of the Cox residence, and saw the appellee with her on a couch, a fact corroborated by both her siblings during the trial.

The prosecutrix specifically dated the last two incidents as happening on March 10th and 17th of 1989. During the former incident, the appellee allegedly engaged in sexual intercourse with the prosecutrix on a couch, while her mother was in Morehead shopping. The final occasion, the prosecutrix alleged, took place in a parked truck off a gravel road, when the appellee and the prosecutrix were returning from an excursion taken to buy some movies for the VCR.

Allegations of the sexual abuse initially aired when the appellee confronted the prosecutrix at the Patrick's front door. The prosecutrix was at the Patrick's house on the evening of March 24, 1989, after her mother and the appellee became engaged in a disagreement that culminated in the prosecutrix, her sister, and her mother going to the Patrick's house as a refuge.

The prosecutrix, her mother, and Lisa Patrick, testified that the appellee, after asking the girl to give him a light for his cigarette, said, "Would you tell our little secret?" When the prosecutrix answered, "Yeah, go ahead," and the appellee failed to respond, the prosecutrix then called her mother to the door and asserted that sexual encounters between the appellee and her had occurred.

The examining doctor at the emergency room where the victim's mother took the prosecutrix after learning of the alleged abuse, testified at trial, that he found the girl's hymen no longer intact, a condition defined as "marital introitus."

Another doctor, the regular family physician, testified that beginning in December of 1988, he had treated the prosecutrix for a peptic ulcer, a condition he said that developed "from emotional trauma or emotional stress." He also testified that the prosecutrix told him, when he was taking her medical history, that she had had sexual intercourse on two prior occasions with her boyfriend in January and June of 1988.

The Commonwealth contends that the trial court properly denied defense counsel's motion for a directed verdict, and that the testimony of the prosecutrix was not so improbable as to require corroborating evidence. *See Carrier v. Commonwealth,* Ky., 356 S.W.2d 752 (1962). In *Carrier, supra,* a pre-penal code opinion, this court found the rape victim's uncorroborated story was insufficient to sustain a rape conviction when her actions, "in light of ordinary rules of behavior," before and after the alleged offense, indicated no such abuse took place, i.e. the story of the victim was "intrinsically improbable."

The appellee claims, as the Court of Appeals found, that the evidence was insufficient to support the rape conviction, according to *Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3 (1983), and *Carrier, supra,* because the only other evidence submitted to substantiate the charges, other than testimony of the victim herself, were: (1) the prosecutrix's previous ulcer condition, (2) her marital introitus condition, and (3) the fact that her stepbrother and sister testified that they saw her with the appellee on the couch, as she had claimed earlier during the trial.

An analogous opinion to the case at bar is *Bussey v. Commonwealth,* Ky., 797 S.W.2d 483 (1990), where the appellant, convicted of sexually abusing a profoundly retarded man, claimed entitlement to a directed verdict, pursuant to *Sawhill, supra.* Further substantiating his claim the appellant in *Bussey, supra,* relied on *Holland v. Commonwealth,* Ky., 272 S.W.2d 458 (1954), a case involving the sexual abuse of small children. In *Holland, supra,* we said:

> '[If] circumstances ... [are] so incredible or improbable or so at variance with natural laws or common human experiences as to be patently untrue,' a directed verdict should be given. *Bussey, supra,* at 484, quoting *Holland, supra,* at 459.

■ *Bussey, supra,* like this case, analyzes the propriety of the trial court's denying a directed verdict motion when the appellant contends that the victim's account is improbable. The test on appellate review

of a trial court's denial of a directed verdict motion is whether under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt. *Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1991); *Sawhill, supra.* In *Bussey, supra,* at 484, we applied this standard and noted:

> While appellant insists that no reasonable juror could have believed the story told by the victim, we believe otherwise. We acknowledge the improbability of some of the details of the victim's version of the story, but the jury could have reasonably concluded that despite the improbability of every detail related by the victim, an act of sexual abuse occurred. In other words, to survive a motion for directed verdict, it is not necessary that every fact related by the victim be reasonable and probable. It is sufficient if the victim's testimony taken as a whole could induce a reasonable belief by the jury that the crime occurred.

■ The facts of this case, as we earlier recounted, fit within the precepts of *Bussey, supra; Benham, supra;* and *Carrier, supra.* The record in the instant case, unlike that found in *Carrier, supra,* reveals no behavior of the prosecutrix that is inconsistent with the rules of "ordinary behavior," in light of the alleged sexual abuse. While the prosecutrix's account of the alleged incidents at trial varied from reports she gave to the examining and treating doctors concerning minor details (e.g. the exact dates of each occurrence), it is within the purview of the jury to determine the credibility and weight of her testimony. We therefore reverse the part of the Court of Appeals' opinion requiring corroborating evidence in the case at bar, and further reverse in part the Court of Appeals' determination that denial of defense counsel's directed verdict motion was improper.

The Commonwealth lastly contends that the Court of Appeals erred in reversing the trial court's prohibition against cross-examination of Randy Patrick, concerning his probationary status for a misdemeanor conviction. The Court of Appeals' opinion held that the appellee was denied his Sixth

Amendment protection of the right to assistance of counsel, when the trial court rejected defense counsel's attempt to show Patrick's possible bias because the witness was on probation. *See Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); *See also Adcock v. Commonwealth,* Ky., 702 S.W.2d 440 (1986).

The Commonwealth argues that because defense counsel failed to offer Patrick's testimony by avowal, pursuant to RCr 9.52, the appellee's assertion of error before the Court of Appeals was unsupported. *Caudill v. Commonwealth,* Ky., 777 S.W.2d 924 (1989). Additionally, the Commonwealth contends that according to *Commonwealth v. Richardson,* Ky., 674 S.W.2d 515 (1984), a non-party witness may be impeached only by use of prior felony convictions, and thus cross-examination concerning Patrick's misdemeanor conviction would have been in error.

■ Defense counsel sought to impeach Patrick during cross-examination by asking him, "Aren't you currently on probation for making obscene phone calls?" When Patrick answered affirmatively and the Commonwealth objected, the trial court admonished defense counsel to desist from pursuing this questioning further, and admonished the jury "not to consider the question or the answer."

"Probation" evidence, in the instant case, was not introduced to impeach the Commonwealth's witness because he was convicted of a crime, thus triggering *Richardson, supra,* rather it was offered to show Patrick's possible bias. *Adcock, supra.* The fact of Patrick's probation raised the possibility that it gave him an incentive to cooperate with the prosecutor. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Adcock, supra.*

Cross-examination has traditionally been allowed to impeach, i.e., to discredit the witness. *Davis v. Alaska, supra,* 415 U.S. at 316, 94 S.Ct. at 1110. The appellee in the instant case, consistently asserted throughout the trial that the prosecutrix accused him of the alleged sexual abuse after he threatened to tell her "secrets." These "secrets," according to the appellee,

included allegations of sexual activity with, among others, Randy Patrick. In earlier testimony Patrick refuted this theory of the appellee.

The U.S. Supreme Court noted in *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), that:

It is plain ... that [a] reasonable jury might have received a significantly different impression of [the witness'] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination. *Olden v. Kentucky,* 488 U.S. at 232, 109 S.Ct. at 483, 102 L.Ed.2d at 520 (1988), quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 683 (1986).

■ The appellee's opportunity to impeach Patrick for bias was improperly denied; thus his right as found in the confrontation clause was violated. *Delaware v. Van Arsdall, supra.* This error is subject to harmless error analysis, as found in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Crane v. Commonwealth,* Ky., 726 S.W.2d 302 (1987).

■ We must find as an appellate court that the error of denying cross-examination of Patrick concerning his probationary status was harmless beyond a reasonable doubt. *Chapman v. California, supra; Commonwealth v. McIntosh,* Ky., 646 S.W.2d 43 (1983). Here, Patrick's testimony was crucial to the prosecution's case. His story directly contradicts that of the appellee, and was corroborated only by the testimony of his wife and testimony of the prosecutrix, both of whom could have interest in supporting Patrick's statements.

■ We thus find it impossible to conclude "beyond a reasonable doubt" that the restriction on the appellee's right to confrontation was harmless. Furthermore, the Commonwealth's contention that this issue is unpreserved because defense counsel failed to offer the testimony by avowal, pursuant to RCr 9.52; *Caudill, supra,* is without merit. It is clearly understood that the only testimony desired by defense counsel was an affirmative answer con-

cerning whether Patrick was indeed on probation for a misdemeanor charge. Providing an avowal pursuant to RCr 9.52, thus would have been superfluous.

We therefore affirm in part the Court of Appeals' opinion that found reversible error when the trial court denied defense counsel an opportunity to cross-examine the Commonwealth's witness concerning his probationary status. We reverse in part the Court of Appeals' opinion finding error in the trial court's denial of defense counsel's directed verdict motion, relying on *Benham, supra*. We also reverse in part the Court of Appeals' opinion holding that evidence was necessary to corroborate the prosecutrix's story under *Carrier, supra*. The case therefore is remanded to the trial court for retrial according to the decision herein.

COMBS, LAMBERT, LEIBSON and REYNOLDS, JJ., concur.

SPAIN, J., files a separate opinion concurring in part and dissenting in part, in which WINTERSHEIMER, J. joins.

SPAIN, Justice, concurring in part and dissenting in part.

I concur in the Majority Opinion except for so much as affirms the Court of Appeals' finding of reversible error because the trial court sustained an objection to cross-examination of a witness regarding his misdemeanor probation.

While I agree that defense counsel has a right to cross-examine a prosecution witness concerning possible bias, I know of no case holding that this would include asking a witness whether he had been convicted of a specific crime. Here the witness was asked if he weren't on probation "for making obscene phone calls." If the purpose of the question was really to focus on the probationary status, it clearly went too far in attempting to also prejudice the jury against the witness because of his particular offense. The trial court was correct in sustaining an objection thereto and admonishing the jury. Of course, this kind of admonition is like trying to "unring a bell" at best, however, and consequently the de-

fense had its way after all. This being so, I fail to see how the Majority can hold that the ruling of the trial court constituted reversible error of constitutional magnitude. I find it harmless beyond a reasonable doubt and, accordingly, would affirm the judgment of conviction.

WINTERSHEIMER, J., joins in this dissenting opinion.